vs. Moscova and Mueller. Good morning. My name is Paul Petruzzi. I represent Appellant Stanley Moscova. Mr. Moscova was convicted for the District Court of conspiring to defraud the IRS, possession of 15 or more unauthorized access devices, and three separate counts of aggravated identity theft. The issue I'd like to start with is the jury instruction issue. At trial, essentially, two witnesses testified regarding Mr. Moscova's alleged attempts to obtain EFINs, electronic filing identification numbers that are utilized by the IRS to file taxes. One of those witnesses was one of, apparently from the record, Mr. Moscova's former girlfriends, Ms. Cortez. Ms. Cortez testified at trial as to some of Mr. Cortez-Guevara and another one of Mr. Moscova's alleged girlfriends, Ms. Garand, who also testified regarding the EFIN, were uncorroborated witnesses both with respect to that particular testimony. That's why it was important when Ms. Cortez-Guevara testified that she was assured she would not be prosecuted by the United States for the defense to request a specific jury instruction, a special instruction, on immunity of witnesses. That issue was addressed by the district court. The district court, I believe, made the same error that the government is making in its brief, and that error is first, finding that there was no, quote, formal grant of immunity. I'm not aware of any law that would require a formal grant of immunity. Indeed, pocket immunity is, I think you are dead right about that. There certainly doesn't have to be a formal grant. You don't have to go to a district judge under 6002 and get use immunity. You don't need a deal letter from the prosecutor, but you need some evidence that the witness testified in exchange for some potential benefit. That's where I have my question for you. The critical language for me is that exchange at 145, the defense counsel, prior to going into the room, were you assured that you would not be prosecuted? Answer, yes. That looks like a promise to me. But then you have the next sentence. Who told you that you would not be prosecuted for anything that you told them? Guevara. Nobody. Let's just stop at that point for a moment, and then we'll take up the rest of the colloquy. Yes, sir. That doesn't strike me as enough to establish some kind of promise for whence the testimony was elicited. Without? If that's all there were, it seems to me you'd be hard pressed to say there's a bargain, there's an exchange, there's a promise. It doesn't have to be in writing. It doesn't have to be formal. It's enough that there was one. But could you say what she says, who told you that? She says nobody, that, well, somehow there was a bargain or a promise? Well, I think she was answering the question very specifically. And the first question, the assurance of non-prosecution, that goes to a promise of non-prosecution. The second question, whether anybody had promised her that she wouldn't be prosecuted for anything she said, that to me seems to be more of a limited use immunity type situation that she would have been talking about. And it's a totally different question. It sounds like use immunity. I agree with that. There's nothing transactional about what you said. But frankly, it strikes me that the language was very imprecise both in the question and in the answer. But then you come to the second part of it. Let me ask it another way. Prior to going into the room, did any of the agents or prosecutors tell you, look, don't worry, we're not looking at you. You're not going to be in trouble. Sounds more like a statement that in a more precise way, you're neither a subject nor a target of an inquiry. Let's just suppose it was put even that precisely. Would that amount to a promise? Would that amount to a bargain if someone, if the prosecutor told the witness, here's your status? How is that a promise that if you speak, nothing you say will be used against you? That's my question. And I follow the court. And that, in fact, is the question and answer that Judge Graham stopped on during the charge conference. And if I recall correctly, he described it as a curious way of asking the question. I would argue that it was perhaps a little inartful. And I think the problem here is that we're all focusing on the trees without looking at the entire forest of who Ms. Cortez was and how she came to be before the government. The facts from her testimony and cross-examination clearly show that she was a target and perhaps even a co-conspirator. And that's the issue. She had to reluctantly admit to signing certain EFIN applications and receiving the EFIN application. And her recollection was that she just didn't know what it was or didn't pay attention or something to that. That was my recollection. Something along those lines. And that could have been used in closing argument had there been a proper instruction about what was in her subjective belief system with respect to whether she was going to be prosecuted by the United States. Right. But a subjective belief system wouldn't be enough, would it? I mean, I might be out of my mind and think anything they said amounted to a promise. It's got to be some objective indicia that is of some evidence that there was a promise, a bargain, an agreement. And here we have a woman who's signed these EFIN applications who is called to testify or is called to the U.S. Attorney's Office to be interviewed by agents. And she walks in and as she said during trial, she was promised she would not be prosecuted. That's what's in her mind. And was there a prosecutor in the room? There was. At the time that this dialogue went down? Yes, sir. And she identified the individuals by pointing them out as they were seated at counsel table on cross-examination. She identified the individuals with whom. All three of them then referred to there were two agents at the table and a prosecutor? Yes, sir. Let me ask you just one final question in this regard. Let's assume that you were right and maybe it was an error not to grant the instruction. The question comes down to so what? The failure to give the instruction must seriously impair the ability to present an effective defense. And I'm not sure that you can sustain that given the overwhelming nature of the evidence in the case, the admissions that were made and so on and so forth. So how do you show that you were seriously impaired? And my time's run out for now. That's all right. You take your time and just if you could answer that for me. Thank you very much, Your Honor. And that's one of the reasons why we relied on actually your opinion in the Martinelli case. In that case, there was, Your Honor, found there to be no substantial impairment or serious impairment of the defendant's ability to defend himself because in that case, all of the district court provided complete instructions on money laundering and not the requested instruction which was less important. In this instance, because Ms. Cortez and Ms. Garand were the only two individuals who obtained those ethans, both of whom were romantically involved with Mr. Moscova who was married at the time, an argument could have been made that, well, had the proper instruction been given, an argument could have been made that she was flavoring her testimony or changing her testimony to unfairly blame Mr. Moscova for something that she herself did. And that's why her testimony should have been considered with more caution. And the court's instruction, the general instruction on the truthfulness of witnesses doesn't cover the consideration of a witness who should be viewed with more caution than your typical witness. What about the instruction had a personal interest in the outcome of the case? Isn't that what you're talking about? That instruction was given. I wouldn't agree that that would still substantially cover the situation, Your Honor, simply because it just advises the jury to consider that in whether they're being truthful, not to look at that witness with jaundiced eyes, to look at that witness with more caution than you're looking at the normal witness. That's the difference. Well, it takes you, maybe it doesn't take you the whole way home, but it takes you a fair way because the judge says to decide whether you believe any witness, I suggest you ask yourself a few questions. Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case, as Judge Black referenced? So it certainly focused the jury on the issue. I think you're right that it doesn't make the circle complete and leaves out the, this kind of witness has to be viewed with particular care and caution, as opposed to an instruction that covers everybody. Yes, sir, Your Honor. You've reserved your full three minutes for rebuttal. Yes, sir. Thank you, Your Honor. Mr. Moss. Good morning. Good morning, Judge Walker. Welcome to South Florida. My official name is Reginald Moss, Jr., but I'm always known as Tony Moss. I represent Roslyn Muller in this field. My time is going to be relatively short because, in part, I'm adopting in full all of the arguments that were set forth by Mr. Petruzzi on behalf of Mr. Moskov of both the factual and the legal arguments as they particularly pertain to both individuals. I acknowledge at the outset that my situation is somewhat different from Mr. Moskov in the sense that Ms. Cortez's testimony made very little reference to him at all. I believe she indicated that she did not know him and there was no evidence that he had any involvement in the case. I don't believe that there was any direct prejudicial effect from Ms. Cortez's testimony. Rather, what we are concerned about is the fact that by failing to give the requested instruction that's at the heart of the case, there was a substantial impairment in trial counsel's ability to argue effectively on behalf of his client. It must be remembered, as I indicated in my brief, that Mr. Moskov and Mr. Muller were co-defendants on five different counts, three of which Mr. Muller was acquitted of, but they were convicted on counts one and two, particularly count one, the conspiracy count. The evidence was unquestioned that there was an ongoing association with the two men leading up to the arrest and there were circumstances indicating that they may have shared a more intimate relationship as well. There's already an inherent risk of potential finding of guilt by association, which is, I suppose, inherent in any criminal trial where the defendants are tried jointly. However, in this particular case, because the testimony did not directly affect Mr. Muller, the concern that we have is a potential spillover effect from the unfairly enhanced credibility that Ms. Cortez would have taken to the jury room in the absence of the requested instruction. Again, as we know, Ms. Cortez was a significant witness. The relationship that she had with Mr. Moskov arguably could unfairly have enhanced her credibility in front of the jury in the absence of the requested instruction, thus providing the spillover effect that we were trying to avoid. Now, presumably, trial counsel made the argument in closing that her testimony should have been scrutinized more carefully, but as this court is aware and as we trial attorneys are well familiar, there's a substantial difference between an argument we can make in front of a jury that is not supported by an appropriate instruction and one that is. Had the instruction been given, then Mr. Muller's trial counsel could have argued that her underlying belief, her subjective perception that she had been granted immunity from prosecution was the factor which led to her eventual cooperation. To that extent, the risk exists that she may have either consciously or unconsciously been inclined to tailor her testimony in a manner more favorable to the government than it otherwise would have been. To the extent that that error would have by implication. I would certainly agree that there was no requirement that there be any type of formal or written immunity agreement. I believe we have that area covered. Essentially, your client actually confessed to filing those tax returns and there was quite a bit of evidence. He had money in his accounts from refunds that had occurred. He said he was mostly unsuccessful in his efforts, but basically admitted to the criminal duty. Essentially, he did, Judge. I would be the first one to concede that the U.S. Garcia case, the one that I cited in my brief, is inappropriate in that sense. I agree that this was not a case in which there was a scarcity of evidence against Mr. Muller, but again, even in spite of those concerns, it still would have ultimately been a jury call. To the extent that there were not properly instructed as to how to view the testimony of Ms. Cortez, and to that extent, there was still a violation. All right. Thank you, Your Honor. Good morning. Good morning. May it please the court, counsel. Good morning, Your Honor. Siva Sri Sundaram on behalf of the United States, and with me today is AOC Elise Perez. Your Honor, as to the jury instruction issue first, Ms. Cortez did not have immunity, so the instruction would have been improper to provide. Do you think it requires formal immunity? That is, you know, a request for immunity, and then a grant of immunity, and a written approval by the government? Not in that sense, Your Honor, no, but I do believe there has to be actual immunity provided in the sense that, as Your Honor mentioned earlier, that there has to be some sort of bargain, some sort of promise that she's receiving in exchange, and as the government stated to the district court in Documentary 162. Why would they announce that they weren't going to prosecute her unless they wanted her to accept that representation and act accordingly? I think the last question that was asked prior to going into the room, did any of the agents or prosecutors tell you, look, don't worry, we're not looking at you, you're not going to be in trouble? I think that's kind of the more accurate representation here, because as the government told the district court, they weren't, we weren't looking at her because there was no evidence. It wasn't a matter, just because someone's not being prosecuted doesn't equate to a grant of immunity, it may just be that there was simply no evidence to prosecute. No, I take it that the three people in the room with Guevara were two agents and the assistant United States attorney. I believe that's correct, Your Honor. The discussion takes place not outside the courthouse, but in the actual U.S. attorney's office. I believe that's correct. Suppose she had said in response to question one prior to going into the room, were you assured that you would not be prosecuted? Answer, yes. Who told you that you would not be prosecuted for anything you told them? Suppose instead of saying nobody, she said the three folks sitting at council table, that is the prosecutor and the two case agents, would that not be sufficient to establish a promise? There would be some potential at that point. You get potential. I want to know whether that would be enough to constitute a promise that would elicit a requirement to give the instruction. At that point, if she had said yes, I think potentially there may have had to been a hearing to get into more detail about what actually happened, but the government... Because after all, the focal point of this is how does it affect the state of mind, the motive for a witness to testify in the manner she may be testifying? Well, I think ultimately, Your Honor... Because the jury is entitled to know that a witness for the United States is up there because they promised her that she didn't have any real problem, any real exposure. Well, and I think this is where we go to the subjective versus objective standard because while her state of mind may very well be relevant to any arguments that defense counsel wanted to make on cross-examination or in closing argument, her subjective state of mind believing that would not warrant the granting of this instruction. No, but we would ask what a reasonable person under these circumstances might apprehend the meaning of this discussion, this dialogue between an assistant U.S. attorney, two case agents in the U.S. attorney's office. Yes, Your Honor, but I think in this case, she was very clear that nobody promised her anything. No, they didn't. So what are we to take of the second colloquy? You are not going to be in any trouble. We're not looking at you. Don't worry. I believe that... How would a reasonable person off the street take that assurance from an assistant United States attorney and two case agents? I think at that point there, any concerns they have are alleviated, but there's no sort of... Concern about what? Concern about liability, concern about criminal exposure, right? Isn't that what this is all about? Yes, but I don't, I think that that exchange there, because if you look at the entire exchange, Your Honor, being told that she wouldn't be prosecuted for anything she told them, and she understood that nobody said that, I think in the context of hearing that answer, no reasonable person would assume, well, okay, I'm not going to be... So she's not a subject and she's not a target to use sort of the inside baseball jargon. Correct. She wasn't being looked at because... Suppose the witness were told by the prosecutor, you are neither a subject nor a target of this case, so you have nothing to worry about, so feel free to tell us what you got to say. The witness is, okay, I did X, Y, and Z, I saw A, B, and C, blah, blah, blah. Would that be enough to trigger the instruction? No, I don't think so. Not at that point, because the witness wasn't a target, wasn't a subject, we have no evidence against that witness, and so there wouldn't be anything to go forward with at that point. I thought the focal point is whether there was some evidence that the government had promised something. It doesn't have to be slam dunk, it doesn't have to be proof beyond a reasonable doubt, it doesn't have to be clear and convincing, it doesn't even have to be by preponderance, right? Do you agree with that? Correct. So you just need some evidence. Correct. But I think at that point, there has to be some sort of bargain and some sort of quid pro quo, and if we have nothing that we're looking at this witness for at the outset, then there's really no exchange at that point of a promise. It's just, hey, we're just letting you know, we're not looking at you, so feel free to talk to us. Well, but you see, what's interesting about the colloquy is, we're not looking at you doesn't come alone. It comes after the first question where you assured you would not be prosecuted, which is as direct and immediate as you can make it, right? Yes, but I think we're also- Whether it's use immunity, transactional immunity, whether it's a promise from the prosecutor, or 6,002 from a district judge, doesn't matter. Prosecuted means they ain't going to prosecute me. And then on the second formulation, it is, well, it looks like use immunity, not transactional. We're not going to use anything you say. You won't be prosecuted for anything you tell us. And I think with that last part of that colloquy, it's been clarified that we're talking about a civilian witness who's maybe not used to the specific jargon there, but by the end of that argument confirms to the district court, look, there was no immunity of any sort granted here. And so without any sort of immunity, that instruction can't be given because, well, the defense was free to question her about her state of mind. They were free to argue in closing argument the general credibility instructions that the jury was instructed about. They were free to do that, but she wasn't granted immunity here. And so to provide that instruction would have served only to confuse the jury. It wouldn't have been accurate in this scenario. Maybe the charge doesn't actually have to refer to immunity as such, but it could refer to the colloquy that she felt that she was not going to be prosecuted and reasonably thought so. And as a result, that could affect one's testimony. And then you just follow on with the immunity charge. I wonder why the government is resisting giving some sort of a charge, a special charge in this particular kind of situation. It was requested by the defense. You presumably opposed it. Yes, Your Honor. And I wonder what the interest is of the government in opposing it. I think the interest here was to not confuse the jury, Your Honor. She wasn't granted immunity. The instruction would have been inappropriate to give. Well, but if you look at the instruction, the 11th Circuit Pattern Instruction S1.1 testimony, the category is testimony of accomplice, informer or witness with immunity. And then if you look at the exact language, it's real interesting. And I remember when it was drafted and it was drafted with surprising breadth. And I want to read it to you. It says you must consider some witnesses testimony with more caution than others. For example, paid informants. Well, she wasn't that. Witnesses who've been promised immunity from prosecution. Well, the first question at least alluded to that. Or this is the third formulation, or witnesses who hope to gain more favorable treatment in their own case, who hope to gain more favorable treatment may have a reason to make a false statement in order to strike a good bargain with the government. So while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses. Pretty broad, right? Yes. And the language or who may hope to gain more favorable treatment from the government in connection with her own case. Now, I don't know whether there was a case or there wasn't, or she thought there was, or there wasn't. But somehow the prosecutor and the case agents thought they had to tell her that. There's no contrary evidence in this record. So I have to assume what she said happened in the U.S. Attorney's office. Along with the government statement to the court that she simply, we weren't looking at her simply because there was no evidence, Your Honor. There was no evidence against her. And so witnesses who hope to gain more favorable treatment in their own case, there simply was no case against her. And so this instruction wouldn't be applicable. Let's assume for our purposes that the instruction should have been given. So what? Does it matter here? No, it doesn't, Your Honor. Why not? Because there was more than sufficient evidence in this case. Not having this instruction did not seriously impair the defendant's ability to put on a defense. Both Mr. Muscova and Mr. Connolly confessed in this case. They each confessed to having filed fraudulent tax returns. Mr. Muscova, in fact, further admitted that he actually filed for an EFIN, which was the entire point of Ms. Cortez's testimony was that she had provided Mr. Muscova with her PII and she provided him with a filled out fingerprint card. And shortly thereafter, an EFIN was filed, was opened in the name Cortez Union Corporation, and that Cortez Union Corporation was used in the tax returns that were fraudulently filed. So and in addition to that, in addition to Mr. Muscova's admission and confession, there were multiple tax refund deposits in his bank statement, in multiples of similar amounts. And so there was more than sufficient evidence in this case, Your Honor, so that even if there was any sort of error here, it wouldn't have made any difference to both Mr. Muscova and Mr. Muller. Mr. Muller also additionally had corroborating evidence as to his confession of filing fraudulent tax returns. He actually had specific tax returns that were deposited directly into his bank statements and that was shown. And so we have more than sufficient evidence even without Ms. Cortez's testimony in this case. So even if there was any error here, it would have made no difference in this case, Your Honor. Your Honors, I have no further questions. I'd rest on our briefs and ask that you affirm. Thanks very much. Thank you, Your Honors. Mr. Petruzzi, you've got the last word. Yes, sir. Thank you very much, Your Honor. If I could start with where counsel for the government left off with respect to Ms. Cortez. I strongly disagree that Ms. Cortez didn't have any belief that she was a target of an investigation in her own mind. She testified, and I'd urge the court to look at the, again, look at the statement of facts and the citations to the record at Appellant's brief starting at page 16 and 17, particularly with respect to Ms. Cortez. She testified at trial that she was in trouble. That coupled with the fact that she was interviewed multiple times by the IRS, agents who visited her home prior to going to the U.S. Attorney's Office, where she met with a prosecutor who told her she wouldn't be prosecuted. That is something that would cause her, in her mind, to believe that she was being immunized, that she was being promised immunity for being there. In fact, there doesn't even have to be a quid pro quo. The instruction, S1.1, just says witness with immunity. Again, Your Honor, I would agree that it's quite correct to hone in on how that instruction is written. It's all about what the witness is hoping to gain, what's in the witness's mind. This is not an instruction to the jury that says you should look at any government witnesses that they tell you who are cooperating witnesses with more caution. Rather, you should look at this witness who hopes to gain some favor or who is hoping that she won't be prosecuted because a prosecutor told her she wouldn't be prosecuted. With respect to any harmless error analysis, I'd urge the court that it wouldn't even be applicable in this case. Again, Ms. Cortez was a very, very important witness. This goes to Judge Walker's question to Mr. Moss. Ms. Cortez, again, was an uncorroborated witness as to the application of that particular EFIN. She was also, insofar as she corroborated the other female witness who testified prior to her, Ms. Guevara, I'm sorry, I got her name wrong, Ms. Garand, she too was someone who, again, was involved with Mr. Moscova. Without Ms. Cortez, her testimony wouldn't have been corroborated. Mr. Moscova did not confess to obtaining an EFIN, period. Mr. Moscova confessed to trying to obtain one. Mr. Moscova did not confess to having that IP address. That was the third defendant. That was Mr. Obens. Mr. Moscova did not have an EFIN company for filing these returns. Again, that was Mr. Oben who came back on his EFIN, the third individual who was in that apartment. This case was all about the constructive possession of these fifteen or more unauthorized access devices. It was all about a conspiracy in that regard for all of these, for these three men, these two women, and everybody else that frequented that apartment and used that internet protocol address. With all of that in mind, that's why it would have been important for a jury to view this particular witness's testimony with more caution than another. Thank you. Thank you both much. Thank you, counsel. I note, Mr. Moss, that you were court-appointed. We very much appreciate you taking on the burden of representing your client in the matter. We'll move on to the next case, which is McGuire v. United Parcel.